UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:10-CR-89 |
| | ) | |
| MICHAEL JAMES MARCUM | ) | |
| | ) | |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a request from the United States Probation Office for the modification of Defendant Michael James Marcum's conditions of supervision. [Doc. 38]. Also before the Court is Defendant's amended motion for the return of seized property, [Doc. 33], and motion to modify conditions of supervised release, [Doc. 41]. The United States has responded to Defendant's motions in opposition, [Docs. 35, 42]. A hearing on all motions was held before the undersigned on December 11, 2019, and the matters are now ripe for review. The Court will discuss each motion in turn.

I. **Background**

On September 2, 2010 defendant pleaded guilty to possession of a computer containing an image of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). [Doc. 2]. *See* [Doc. 1]. On March 21, 2011, the Court overruled Defendant's objections to the special sex offender conditions, and sentenced him to 54 months' imprisonment and to a lifetime term of supervised release consisting of both standard and special conditions of supervision. [Doc. 17]. Defendant completed his term of imprisonment and began his term of supervised release on August 8, 2014.

Approximately four years later, in 2018, defendant's supervising probation officer submitted a violation report advising of Defendant's violation of his conditions of supervised release. A May 22, 2018 routine polygraph exam resulted an inconclusive test. The polygrapher reported Defendant attempted to manipulate the test by holding his breath during comparison questions, questions that should be answered undoubtedly. [Doc. 38 at 2]. In response to these allegations of employing polygraph countermeasures, the assigned probation officer conducted a June 5, 2018 search of defendant's primary and secondary

1

residences. In the search of the approved secondary residence, the home of Laura Byler, the probation officer found a computer tower in the living room, a Samsung smart cell phone under Defendant's mattress, and another cell phone in the bedroom. *See* [Doc. 33-1 at 1, 3]. Byler claimed ownership of the cellphone, but was unable to unlock the double encryption when asked by law enforcement officials.

Images found on the computer tower included Byler, Byler's husband, Defendant, and a minor child swimming together at Wetlands Water Park in Jonesborough, Tennessee. Other images included sexually explicit photographs and videos of Defendant, Byler, and her husband. Additionally, multiple pictures on multiple dates show Defendant taking pictures, "selfies," of himself with the same Samsung cell phone found underneath a mattress during the search.

Defendant entered into an August 6, 2018 agreed order of revocation admitting to the revocation violations and agreeing to a nine-month term of imprisonment followed by a lifetime term of supervised release. [Doc. 29]. Defendant stipulated to violations of his supervised release from violating the Tennessee Bureau of Investigation Sex Offender registration law Tennessee Code Annotated § 40-39-211[1] as evidenced from pictures and videos of Defendant with an underage age child at a local waterpark. Defendant signed the agreed order and, to promote respect for the law, prevent recidivism, and aid in adequate supervision, Defendant agreed to comply with thirteen standard conditions of supervision adopted by this Court in Local Rule 83.10 and thirteen special sex offender conditions adopted by this Court in Standing Order SO-15-06. [*Id.* at 5-11]. Defendant began his lifetime term of supervised release on March 7, 2019.

---

[1] The relevant provisions of Tennessee Code Annotated § 40-39-211 (d)(1) provide:

Residential and work restrictions –

> (d)(1) No sexual offender, as defined in 40-39-202, or violent sexual offender, as defined in 40-39-202, shall knowingly,
>
> (A) Be upon or remain on the premises of any building or grounds of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public in this state when the offender has reason to believe children under eighteen (18) years of age are present.

In February, 2019, Defendant moved for the return of seized property from the June 5, 2018 search. [Doc. 32]. In an amended motion, Defendant expanded his request to the two cell phones and asked that the cell phones be specifically returned to Byler. [Docs. 33, 34]. The Court granted Defendant's initial motion, [Doc. 32], and the seized items were released to Byler, [Doc. 45]. In the order, the Court set a hearing on Defendant's amended motion regarding the return of the cell phones.

Defendant was administered a polygraph exam in August, 2019. The probation officer noted that during the pre-test admissions, Defendant admitted to the polygraph examiner that he viewed full nudity on HBO, used electronic devices at the career center and his current job with his probation officer's permission, stated he only had incidental contact with minors at Lowe's and Jersey Mikes, and visited an adult bookstore with an adult female friend and that the probation officer was aware of the visit. [Doc. 38 at 4]. However, the test indicated Defendant was untruthful in his answers to the following three questions:

1. Other than incidental contacts since March 2019, have you been completely alone with a minor?

2. Since March 2019, have you left the Eastern District of Tennessee without permission?

3. Other than what we discussed today since March 2019, have you accessed any electronic devices that your probation officer is unaware of?

[*Id.*]. During the post-test interview, Defendant was shown the results and was given an opportunity to explain the discrepancies, and Defendant stated that he failed to mention that his girlfriend and sister showed him YouTube videos on their cellphones. [*Id.*].

On September 5, 2019, Defendant reported to his probation officer to discuss the polygraph results. The Probation officer asked Defendant when he had notified the officer that he had been to an adult bookstore. Defendant responded that he wrote the information on one of his reporting forms. Defendant admitted to the probation officer that going to a sex shop was probably not a good idea. After the polygraph and Defendant's new admission, the probation officer petitioned the Court to modify the conditions of Defendant's supervision to add a pornography ban condition to his supervised release. [Doc. 38].

3

On October 5, 2019, Defendant filed a motion to modify conditions of supervised release. [Doc. 41]. In the motion, Defendant challenges six conditions of supervised release that he had agreed to in August, 2018 and the probation officer's proposed condition.

The Court held a December 11, 2019 hearing on the pending motions. At the hearing, Defendant was present with counsel. The Court heard testimony from Mr. Brian Sexton, a certified sex offender treatment provider in the State of Tennessee, who provided individual treatment to Defendant in September and October of 2019, and Mr. Rick Rodgers, polygrapher of Defendant's May 2018 and August 2019 polygraph examinations.

## II. Probation's Request Modification of Supervision

"District courts have 'broad discretion to impose appropriate conditions of supervised release.'" *United States v. Chase*, 740 F. App'x 833, 834 (6th Cir. 2018) (quoting *United States v. Ritter*, 118 F.3d 502, 506 (6th Cir. 1997)). "To qualify as 'appropriate,' a condition 'must reasonably relate to the nature of the offense and the history and characteristics of the defendant' and must encompass 'no greater deprivation of liberty than is reasonably necessary to serve the goals of deterrence, protecting the public, and rehabilitating the defendant.'" *Id.* (quoting *United States v. Inman*, 666 F.3d 1001, 1004 (6th Cir. 2012)); *see also* 18 U.S.C. § 3583(d)(2).

On September 12, 2019 the probation officer submitted a request and summons for modification of Defendant's conditions of supervision. [Doc. 38]. Specifically, the probation officer submitted a proposed condition to Defendant's supervision that reads:

> [t]he defendant shall not possess any photographs or images of adult pornography. Nor shall he visit, frequent, or remain about any place where such material is available.

This condition is not limited to child pornography, which is illegal to possess. Instead, it bars Defendant from accessing adult pornography that is otherwise legal. Bans on explicit material involving adults raise First Amendment implications and thus are subject to "careful review." *United States v. Zobel*, 696 F.3d 558, 576 (6th Cir. 2012) (quoting *Ritter*, 118 F.3d at 504). But such bans are generally upheld as long as they "are 'primarily designed to meet the ends of rehabilitation and protection of the public.'" *Id.*

4

Defendant opposes the additional condition and argues the proposed condition is "overbroad, unconstitutionally vague and not reasonably related to his original crime of conviction." [Doc. 57 at 6]. More particularly, Defendant argues that the condition is broad because the nebulous definition of pornography would render some material he is readily exposed to on a daily basis as pornographic. [*Id.* at 7]. Further, Defendant contends that the proposed condition is not reasonably related to the current circumstances, because Defendant has not committed a pornographic related violation nor was there any pornographic related concern noted by probation or therapy since his initial 2014 release from prison. [*Id.*]. Conversely, the government contends that the additional condition is appropriate in light of Defendant's conduct during his supervised release. [Doc. 59 at 1-2].

The Sixth Circuit has recognized that, in child pornography cases, there is no controlling precedent on "whether a ban on all pornography is impermissibly vague, and the circuits are split on the issue." *Chase*, 740 F. App'x at 835 (citing *United States v. Lantz*, 443 F. App'x 135, 140-1 (6th Cir. 2011)). Our sister circuits have upheld similar bans on the possession of both adult and child pornography when a defendant has been convicted of possessing child pornography upon a finding of a sufficient connection between such possession and illegal behavior. *See United States v. Brigham*, 569 F.3d 220 (5th Cir. 2009); *United States v. Daniels*, 541 F.3d 915, 927-28 (9th Cir. 2008); *United States v. Simmons*, 343 F.3d 72, 82 (2d Cir. 2003).

In *Chase*, the Sixth Circuit rejected a challenge to a condition with similar language banning the defendant from possessing, viewing, listening, or going to locations where any form of pornography, sexually stimulating performances or sexually orientated materials or services are available. *See Chase*, 740 F. App'x at 833. There, the Court rejected defendant's argument that the condition, particularly the "sexually orientated material, items, or services" language was vague and overbroad. *Id.* Specifically, the Court rejected the defendant's assumption that his probation officer would interpret the restriction to prohibit a wide range of activities, and material, such as reading the Bible or going to the library. *Id.* at 836. *See also United States v. Smith*, 564 F. App'x 200 (6th Cir. 2014). Instead, the Court did not read

5

the condition "so expansively" and noted that "if problems do arise, [the Sixth Circuit has] faith in the district court's ability to clarify its restriction." *Chase*, 740 F. App'x at 836 (citation omitted).

In this case, the Court likewise rejects Defendant's argument that the proposed condition is overbroad and vague. In fact, Defendant's condition is even more constitutionally justified than the condition in *Chase*, because, unlike *Chase*, the condition is specific to images or photographs of adult pornography and places where Defendant could obtain such material, and not a broader ban from possessing or viewing "sexually orientated materials." *Id.* at 834.

Defendant stated he had been purchasing adult pornography for five to six years prior to his 2010 conviction; he further stated to federal agents that "he never sought child pornography, but had seen it through re-direction from adult pornography sites by clicking on a thumbnail before he knew it was child pornography." [Presentence Investigation Report ("PSR") ¶ 10].

During the December 2019 hearing, the Court heard testimony from Defendant's treating sex offender counselor who stated that adult pornography is a gateway to underage content for child pornography in Defendant's case. More particularly, the counselor testified "there is a definitive relationship between [Defendant's] viewing adult pornography and his progression to child pornography." In fact, in 2015, the counselor made a recommendation that Defendant not be permitted access to any pornography or sexually explicit material based on his risk assessment completed as part of his counseling services. The counselor commented that Defendant's May 2019 visit to an adult store was discussed as part of his sex offender treatment, and Defendant acknowledged, for purposes of his treatment, that he knew he should not have visited the store. In his opinion, the counselor believed that possessing and viewing adult pornographic material is likely to interfere with Defendant's rehabilitation.

Defendant argues the condition is not reasonably related to Defendant's current circumstances, notably that defendant has not committed a pornographic related violation since his initial release from prison in 2014. [Doc. 57 at 7]. The Court rejects this view, given that Defendant's initial conviction of possession of child pornography is "the paradigmatic case in which these bans are imposed." *Zobel*, 696 F.3d at 576. Defendant possessed over 600 images of child pornography and video files. [PSR ¶ 12]. It is true that both

Defendant's underlying crime and adult pornography have to do with sexual activity.  Moreover, Defendant violated multiple terms of his supervised release in 2018 by associating with minors and possessing electronic devices in violation of the Tennessee Bureau of Investigation Sex Offender Registration law. [*See* Doc. 27].  Numerous sexually explicit pornographic photos and videos of Defendant, Byler, and her husband were discovered on the computer tower recovered during the search.  Both Probation and Defendant's counselor found it concerning that he had been recently watching adult full nudity on HBO.  Given the extent and seriousness of his relationship with child pornography, the evidence in the record suggests that viewing adult pornography led was a "gateway" leading Defendant to commit the underlying crime and would make it more likely for Defendant to repeat the crime.

Finally, the Court does not read this restriction so expansively as to prohibit Defendant from participating in a wide range of activities such as watching cable television and visiting certain locations, such as Barnes and Nobles bookstores or gas stations.  *See Chase*, 740 F. App'x at 836.  Further, if problems do arise, this Court is assured it has the "ability to clarify its restriction." *Id.* (quoting *Smith*, 564 F. App'x at 207); *see* 18 U.S.C. § 3583(e)(2).

Accordingly, the Court finds that this condition is appropriate considering the Defendant's history, characteristics, the need for deterrence, and Defendant's rehabilitation.  As such, Defendant's conditions of supervision are MODIFIED to include the proposed condition of supervision: "[t]he defendant shall not possess any photographs or images of adult pornography.  Nor shall he visit, frequent, or remain about any place where such material is available." [Doc. 38].

III.     **Defendant's Motion for Modification of the Conditions of Supervised Release**

Title 18 Section 3583(e)(2) of the United States Code allows a court to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release[.]"  18 U.S.C. § 3583(e).  When making this determination, a court considers (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) deterrence of criminal conduct; (3) protection of the public; (4) the need to provide the defendant with educational, vocational training, medical care, or other rehabilitation; (5) the sentence and sentencing range established

for the category of defendant; (6) any pertinent policy statement by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3583(e); 18 U.S.C. § 3553(a).

More specifically, special conditions must: (1) be reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant; (2) involve no greater deprivation of liberty than is reasonably necessary to adequately deter criminal conduct, protect the public, and provide the defendant needed services or treatment; and (3) be consistent with any pertinent policy statements issued by the Sentencing Commission *See* 18 U.S.C. §§ 3553(a), 3583(d); *United States v. Kingsley*, 241 F.3d 828, 836-37 (6th Cir. 2001); *see also United States v. Childress*, 874 F.3d 523, 526 (6th Cir. 2017).

In the signed August 6, 2018 agreed order of revocation, Defendant agreed to comply with thirteen standard conditions of supervision and thirteen special sex offender conditions. [Doc. 29 at 5-11]. Defendant now makes six challenges to these terms of supervised release. [Docs. 41, 57].

At the outset, the parties agree to the elimination of one condition, special condition (8), the submission of a psychosexual assessment at Defendant's own expense. The Government acknowledged at the hearing that Defendant had previously submitted to psychosexual assessments and another such evaluation would be repetitive. [Doc. 59 at 2]. Therefore, the special sex offender condition of supervision (8) is hereby TERMINATED.

Defendant first challenges standard condition (12), which states that:

> In his sole discretion, if the Probation Officer concludes that Mr. Marcum poses a risk to another person or entity, he can require the defendant to notify the person or entity about the risk and the Probation Officer may contact the person to confirm that the defendant has notified the person about the risk.

Defendant argues the "condition is overbroad and unduly vague." [Doc. 41 at 2]. He maintains that a "reasonable interpretation of the condition suggests that the Probation Officer can require the defendant to inform any third party that he comes in contact with of the risk without a clear understanding

of what the particular risk may be." [*Id.*].  Further, Defendant opposes the clause of the provision permitting the probation officer to have private conversations with third parties to inform them about the risk Defendant poses.  [*Id.*].  Defendant suggests this provision be limited to only an employer.

The government contends this condition is appropriate as written, because it ensures the community is protected by providing the assigned probation officer with the authority and discretion to require Defendant to notify persons or entities of risk and to follow up for confirmation.  Further, the government argues that this condition would be hard to limit to only an employer especially barring any follow up from the probation officer.  The government acknowledged that the individual circumstances of a specific case necessitate particularized action and, as such, cannot be limited to one scenario.

In a 2017 unpublished decision, the Sixth Circuit held that a similar notification standard condition of supervised release was unconstitutionally vague.  *United States v. Sexton*, 719 F. App'x 483, 484-85 (6th Cir. 2017).  The standard condition there required the defendant, as directed by the probation officer, to notify third parties of risk that may be occasioned by his criminal record or personal history or characteristics, and also permitted the probation officer to make such notifications and to confirm his compliance with such notification requirement.  *Id.* at 483-84.  The Sixth Circuit found that the condition provided too much discretion to the probation officers and too little notice to defendant about what conduct is required.  *Id.* at 485.  The Sixth Circuit reversed the district court's imposition of the standard condition finding it vague and that it failed to provide explicit standards that Due Process requires.  *Id.* at 484.

Unlike *Sexton*, the language of the condition in question does not require disclosure of "personal history or characteristics" or "criminal record."  Instead, the present standard condition only requires a probation officer to determine a "risk" to a "third party", require Defendant to notify the third party of the risk, and provides the probation officer with the authority to confirm the notification with the third party. [*See* Doc. 29 at 7].  The risk in this particular case involves any potential risk to a minor.  In regard to what constitutes third parties, defense counsel has recognized that employer notification is appropriate.  The Court agrees with defense counsel, and finds that employers and potential employers should be categorized as third parties.  Further, the Court finds that any third party contact in which there is a reasonable possibility

9

that minors could be involved, would be considered an appropriate third party for the purpose of this standard condition. For example, it would be appropriate for the probation officer to require Defendant to disclose the risk to: a romantic interest who is a single parent with full custody of his or her minor children, or a close friend who works as a live-in nanny to minor children and expects defendant to visit his or her residence while the children are present, or a company which defendant employs that hires minor employees of working age to visit Defendant's residence to walk his pet, or an organization that actively hires minor volunteers or interns, such as a non-profit animal shelter, where Defendant has also volunteered. This list is not exhaustive, but rather provides examples of when there is a potential risk to a minor and it would be appropriate for the probation officer to require Defendant to notify the third party of the risk. However, there are other instances in which the notification requirement would not necessarily be trigged. For example, if Defendant has a romantic relationship with a person without children, or if Defendant decides to join a local gym that has an eighteen-year age requirement to use to the facility.

Finally, it is notable to consider that the underlying conviction in *Sexton* was a false statement conviction. *See Ritter*, 118 F.3d at 502 (discussing the notification requirement for an embezzlement conviction). Here, Defendant has a felony sex offense and has violated the state sex offender registration law. Protection of the public is seemingly of greater concern in this case due to the nature of Defendant's convictions. For the aforementioned reasons, with the clarifications stated, the Court finds that there is a clear nexus between Defendant's offense and the condition, and the Court declines to modify the challenged condition of supervised release.

Second, defendant challenges special condition (1), which reads:

> The defendant shall participate in a program of sex offender mental health treatment at his/her own expense, as approved by the probation officer, until such time as he/she is discharged from the program by the provider and as approved by the probation officer. The defendant shall comply with the policies and procedures of the treatment program. The defendant shall waive all rights to confidentiality regarding sex offender mental health treatment in order to allow release of information to the United States Probation Office, and to authorize open communication between the probation officer and the treatment providers[.]

Defendant requests this condition to be terminated, because Defendant had previously successfully completed a sex offender treatment program and has not committed another sex offense. [Doc. 41 at 4].

Defendant is a convicted sex offender who has violated his supervised release by attending a waterpark with a minor. Defendant correctly notes that a violation of Tennessee's Sexual Registry Act, the offense in the instant case, is not a "sex offense" as defined by the United States Sentencing Guidelines § 5D1.2, application note 1. [*See* Doc. 41 at 4]. It cannot be discounted that "[i]t is [Defendant]'s status as a sex offender that put him in his position." *United States v. Barcus*, 892 F.3d 228, 236 (6th Cir. 2018). Although, Defendant has completed a sex offender program, [Doc. 41-1], however, Defendant has not been discharged from his treatment supervision requirement as directed by his probation officer under his supervision. [*See* Doc. 29 at 7].

The record reflects that the underlying sex offense and conviction occurred in 2010 and the Defendant was released from imprisonment in 2014. The Defendant violated the terms of his supervision in 2018, four years later. The imposition of a sex offender mental health treatment supervision provision within this temporal proximity to a sex offense has been upheld by caselaw. *See Barcus*, 892 F.3d at 237 (upholding the imposition special conditions of supervised release including sex offender treatment for a sex offender registration and notification act violation, when singular the underlying sex offense occurred six years ago); *Childress*, 874 F.3d at 528 (affirming the imposition of a special condition of psychosexual evaluation based on a sex charge six years prior); *Cf. United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006) (holding that a 1988 rape conviction was too remote to be reasonably related to impose special sex offender conditions of supervision). Here, Defendant's underlying 2010 child pornography conviction is reasonably related to the requirement Defendant continue sex offender mental health treatment until he is discharged from the program by the provider and as approved by the probation officer. [*See* Doc. 29 at 7].

Third, defendant challenges special condition (9), that "defendant shall submit to polygraph testing . . . as directed by the probation officer, in order to determine if he[] is in compliance with the conditions of his supervision, or to facilitate sex offender treatment, the defendant shall be truth during polygraph evaluations." [*Id.* at 9].

11

Polygraph testing is an appropriate supervisory tool. Polygraph examinations help the probation officer monitor a defendant's rehabilitation and compliance with release conditions. In this particular circumstance, the polygraph examiner testified that the results of the polygraph examination were only disclosed to the treatment providers for the context of the treatment and the probation officer for supervisory purposes. The polygrapher also specified that the results were not disclosed to law enforcement personnel, and, as such, do not trigger any self-incrimination concerns under the Fifth Amendment. *See United States v. Von Behren*, 822 F.3d 1139, 1143-51 (10th Cir. 2016) (finding a violation of defendant's right against self-incrimination when polygraph examinations that revealed admissions of uncharged sexual crimes would be reported to the authorities and could be used as evidence if defendant was ever charged with a new sexual crime).

Polygraph *evidence* may be unreliable and inadmissible at trial, *United States v. Dotson*, 324 F.3d 256, 261 (4th Cir. 2003), but in the supervision context, polygraphs "are tools to help the probation officer monitor defendant's rehabilitation and compliance with release conditions; the tests are not geared toward the collection of evidence for prosecution of possible future parole violations," *United States v. Wilson*, No. 98-5373, 1998 WL 939987, at *3 (6th Cir. Dec. 22, 1998). The Defendant's previous failure to comply with supervision justify the Probation Officer's concern that Defendant will not be truthful about his conduct. As for any speculative concern over a future revocation of Defendant's supervision, Defendant "retains the right to challenge the reliability of polygraph . . . tests should they be used in the future by the government as a basis for seeking revocation of his supervised release." *Id.* Accordingly, the Court finds that this condition remains appropriate considering the Defendant's history, characteristics, and the need for deterrence.

Fourth, Defendant challenges special condition (12), a ban on computer usage or possession, which applies to any electronic device with access to the internet without the approval of the probation officer. [*See* Doc. 29 at 10].

Defendant argues the condition is a lifetime ban from computers and "in today's technological world dooms Mr. Marcum to sure failure." [Doc. 41 at 6]. Defendant further argues that "a[] variety of

less-restrictive options are available to the Court, [including] unannounced searches or monitoring software." [Doc. 57 at 12]. Defendant also argues that a computer ban is an occupational restriction as Defendant's area of expertise is in information technology. [*Id.*]. Defendant requests internet usage to work with his family managing an online advertising business. [*See* Doc. 57-4]. The government argues that Defendant's current request has no mechanisms for the probation office to effectively monitor and supervise Defendant's internet usage, and without such a mechanism in place Defendant's request must be denied. [Doc. 59 at 4].

Restrictions on child pornography defendants' ability to access a computer or the internet are legitimate and commonplace. However, the Court also acknowledges "there appears to be a consensus that internet bans are unreasonably broad for defendants who possess or distribute child pornography, but not those who use the internet to 'initiate or facilitate the victimization of children.'" *United States v. Wright*, 529 F. App'x 553, 558 (6th Cir. 2013) (internal citation and quotation marks omitted); *Lantz*, 443 F. App'x 144. Here, Defendant was convicted of possession of a computer containing an image of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Defendant was convicted after a Bureau of Immigration and Customs Enforcement international investigation found Defendant's email address was associated with the purchase of child pornography from an Italian resident. [*See* PSR ¶ 8]. Nothing in the record suggests that Defendant was more than a consumer of child pornography. The Court notes that this supervised release revocation case involves a violation of the state's sex offender registration law. A search of Defendant's secondary residence uncovered images located in a computer tower and on the Samsung cell phone of Defendant violating the sex offender registration law. As such, computer and internet access were used to accomplish Defendant's underlying crime. *See United States v. Dotson*, 715 F.3d 576, 586 (6th Cir. 2013).

Restrictions are permissible as long as they are appropriately tailored. In the instant case, the ban is not absolute. Defendant may obtain internet access as long as he obtains permission from the probation officer. The Court specifically recognizes that "the role of technology in the workplace and educational institutions" and that Defendant's rehabilitation "may be dependent upon obtaining education that provides

the skills necessary for employment." *Dotson*, 715 F.3d at 587. In this case, the condition is appropriate. Defendant has been allowed to use computers and internet as part of his job with third-party employers. *See Wright*, 529 F. App'x at 558. Defendant is currently employed as a sales associate with Century Link and has been previously employed by Citi Bank. In both cases, the third-party employers were informed of Defendant's sex offender status and the employers monitored Defendant's computer and internet usage.

Defendant now requests to be able to use a computer as part of a new family business. Defendant suggests the use of computer monitoring software to supervise Defendant's computer usage. If the monitoring software, Covenant Eyes, were to be used, it would have to be installed on every computer used for the business. Further, there would need to be a trusted third party to have complete access to the computer with the installed software and the weekly reports. In this case, there is no such third party available who could monitor the computer. Most notably, Covenant Eyes cannot track or monitor computer activity on the dark web. Even with the monitoring software installed, the dark web remains open to someone who is extremely knowledgeable and skilled in information technology, and computer security, such as Defendant. In light of Defendant's history and characteristics, including the facts of his underlying sex offense and his conduct during supervision, the Court is convinced there are no particular conditions or modifications that would involve no greater deprivation of liberty than is reasonably necessary to adequately deter criminal conduct.

Fifth, Defendant objects to special condition (13), a prohibition on possession or usage of "any data encryption, data elimination, or access-protection technique, device, or program designed to conceal, eliminate, or corrupt material that is illegal, designed to produce a sexual interest in [minor] children . . . or prohibited by the probation officer." [Doc. 29 at 10-11].

Defendant requests this condition to be modified to permit those items necessary to safeguard electronic devices but with the express requirement that the defendant provide the probation officer with all codes necessary for the officer to access any and all electronic items Defendant possesses during his term of supervision. [Doc. 41 at 7].

The June 8, 2018 search of Defendant's secondary residence revealed a double encrypted cell phone, which included an additional password prior to the factory password. The level of encryption was so sophisticated that law enforcement did not possess the technology required to decode it when the cell phone was seized. Defendant has a Bachelor's of Science degree in Computer Information Systems and has worked as an information technology engineer, and possesses a high level of knowledge and skill to encrypt multiple electronic devices. [PSR ¶¶ 7, 41]. Defendant does not assert that he is required to use encryption software when working for clients as part of Defendant's job description working with the online advertising business. [Doc. 57-4]. Accordingly, the Court finds that this condition remains appropriate considering the Defendant's history, characteristics, and the need for deterrence.

**IV.     Motion for Return of Seized Property.**

Defendant moves under Rule 41(g) for the return of two cellphones seized during the probation officer's June 8, 2018 search of his registered secondary residence, Byler's residence, to Byler. [Doc. 33]. Federal Rule of Criminal Procedure 41 provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g). The general rule followed by district courts is "that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated." *Savoy v. United States*, 604 F.3d 929, 932 (6th Cir. 2010) (quoting *United States v. Hess*, 982 F.2d 181, 186 (6th Cir. 1982)). "The person seeking return of property must show that they are lawfully entitled to possess it." *United States v. Headley*, 50 F. App'x 266, 267 (6th Cir. 2002). "When the government has a 'continuing interest' in the property, the property does not have to be returned." *United States v. Popham*, 382 F. Supp. 2d 942, 955 (E.D. Mich. 2005) (citing *United States v. Francis*, 646 F.2d 25, 263 (6th Cir. 1981)).

The Court notes that defendant's special sex offender condition (12) prevents him from possessing a modern cellphone. [*See* Doc. 29 at 10] (Special condition (12) prohibits him for the possession of any electronic device with access to the internet, including "smart" cellphones). As such, it is undisputed that under Defendant's current terms of supervised release, he is not lawfully entitled to possess the cellphones in question. *See Headley*, 50 F. App'x at 267. Defendant neither claims ownership of the cellphones nor wishes to have them returned to his possession. Instead, defendant moves to have the seized cellphones returned to Byler, a third party.

Defendant argues Rule 41(g) authorizes any person aggrieved by a seizure of property or by the deprivation of property to file a motion for the return of that property and that "the rule does not speak of an ownership interest in the property seized but rather by its plain terms, authorizes anyone aggrieved by a deprivation of property to seek its return." [Doc. 57 at 3]. Specifically, defendant argues he has met his burden of establishing his possessory interest the cellphones seized throughout the language used the petition to revoke supervised release. [*Id.* at 4].

The government contends defendant lacks standing to seek the return of the seized property without claiming ownership over the cellphones. [Doc. 59 at 4]. The government notes that although Byler initially claimed ownership of the phones at the time of the search, she did not know the passcode and was "noticeably absent at the hearing and has made no demand for return of the cell phones to her as a third party." [*Id.*].

Defendant lacks standing to assert the return of the property on Byler's behalf. *Headley*, 50 F. App'x at 267 (holding that defendant lacked standing to move for return of a firearm on behalf of his father, the lawful and rightful owner of the property); *United States v. Barnett*, No. 09-CR-67-JMH-HAI, 2014 WL 1413530, at *3 (E.D. Ky Apr. 11, 2014). The *Headley* Court found that without evidence or an attached affidavit from the third party, "bald assertions that the property belongs to [a third party] are not sufficient to authorize the release of the" seized property. *Headley*, 50 F. App'x at 267. Here, defendant proclaims the cellphones belong to Byler, but has not provided the Court with evidence of her ownership. Notably, defendant has not offered an affidavit or testimony from Byler or any other concrete evidence linking

ownership of the cellphones to Byler. As defendant lacks standing, defendant's motion for the return of seized property, [Doc. 33], is DENIED.

V.      **Conclusion**

The Court MODIFIES Defendant's supervision to include the condition:

> [t]he defendant shall not possess any photographs or images of adult pornography. Nor shall he visit, frequent, or remain about any place where such material is available.

The Court GRANTS IN PART Defendant's motion for modification of supervised release, [Doc. 41]. Special sex offender condition (8) of Defendant's supervised release is TERMINATED. The remaining standard and special sex offender conditions of supervision remain.

Defendant's motion for the return of seized property, [Doc. 33], is DENIED.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
